19-5328 Ahmad Muafag Zaidan v. Bilal Abdul Kareem appellant v. Donald J. Trump, President of the United States, et al. Ms. Pluchatsky for the appellant, Mr. Hinshelwood for the appellee. Ms. Pluchatsky, please proceed when you're ready. Good morning, Your Honors, and may it please the Court. This is a case of first impression in which the government has argued that it may designate a U.S. citizen for execution without due process and insulate that decision from judicial review on the basis that it's a state secret. This represents a radical expansion of the state secret's privilege, and the Fifth Amendment's guarantee of due process forecloses the government's argument. Mr. Kareem is a U.S. citizen and a journalist. He has rights, they are justiciable, and the government does not have the discretion to bypass the Constitution by invoking a common law evidentiary privilege. Our position here is simple. An American citizen who demands due process upon discovery that he is a target of lethal action is entitled to notice of the basis for that action and an opportunity to challenge it. That is basic due process, and no U.S. court has permitted less when a U.S. citizen has come before it. Can I just take you to the question of standing for a second before we get into the teeth of the state secret's issue? And on standing, one key consideration that's pointed to is that at least one of the alleged strikes was a Hellfire missile. That's correct, Your Honor. That's in the complaint at page 49, I'm sorry, paragraph 49, I think, of JA-22. The vehicle of Kareem and his staff was struck and destroyed by a drone-launched Hellfire missile, which seems to be a significant fact in your view because it more explicitly links it, that attack at least, to the possibility that it was the United States. And then I just noticed in your brief at page 9 that your opening brief, and it says the strike came in the form of what appeared to be a Hellfire missile. And since it's a somewhat significant fact whether it's a Hellfire missile, I'm just wondering why the brief frames it in terms of what appeared to be rather than the allegation in the complaint that it is. Your Honor, our brief did not intend to depart from the facts alleged in the complaint. In terms of saying it appeared to be a Hellfire missile, of course, it's impossible with any kind of certainty without having had an opportunity to move to the merit stage to prove that it was a Hellfire missile. But Mr. Kareem does allege that it was a Hellfire missile. So then can I ask you this question? Let's just – there are some issues about Hellfire missiles, the extent to which that says that it's the United States, that indicates that it's the United States, as opposed to it could be somebody else. But if we take that one, that particular attack, out of the field of vision just for arguments purposes – I understand that we're not taking it out, but let's just do it for arguments purposes – and what you have is the other four, would you still take the position that you've advanced past possibility to plausibility in terms of the United States being responsible for the missile attacks based on the other four alone? Absolutely, Your Honor. As we've alleged in our complaint, the United States uses signal intelligence and metadata in order to determine who to target for lethal action. In this case, the government has admitted that it conducts lethal strikes in Syria, that it was doing so during the time that Mr. Kareem was struck. Mr. Kareem uses signal-emitting devices, and he was struck, in your hypothetical, four times then with an incredible precision, not in the context of an ongoing battle, but four unique strikes, including two on his office, two on his vehicle, I think, are the ones that would be listed. It wasn't his office, it was his employer's office. Well, on the ground network is constructively Mr. Kareem's operation. He's the only one? He's not the only person, no. Have you alleged that these were the only strikes made on those days? I don't see anything. You've painted a picture as if one missile hit on each one of these days. And I frankly think we could take judicial notice that in 2016, strikes were being conducted all over Syria, and certainly including where Mr. Kareem was. Your Honor, that certainly is possible, but it doesn't mean that the US didn't undertake these strikes on Mr. Kareem deliberately. It is at the pleading stage, as you're well aware, Mr. Kareem is only required to allege one plausible version of facts. The government is attempting to challenge the merits of our allegations. We'll have an opportunity to do that in discovery if the government wants to prove that it was not the United States or that it was some other actor, it can do so. But the facts, as alleged, must be taken as true at this juncture. We can't ignore reality. And frankly, it seems to me a spectacular delusion of some sort of grandeur that your client thinks that the United States was aiming for him when bombs and drones and missiles were hitting all over that country and millions of people were fleeing for their lives. But your Honor, in June of 2016, there are no other facts on the record that suggest that there were a flurry of drone strikes occurring in that month. I go back to my question, do we ignore reality? Your Honor, we don't ignore reality, but I think at this juncture, reality for June of 2016 in Aleppo, Syria, has not been established on this record. And so it would require incorporating into the complaint facts that have not been alleged by Mr. Karim and certainly facts that have not been raised by the government. In fact, the government's attempt to undermine the plausibility of Mr. Karim's claim only shows that it's more plausible that he was targeted by the United States. The government says, for instance, well, the Assad regime executes journalists, but it doesn't say so that it did it by drone strikes. It also says that the Assad regime uses drones indiscriminately, but indiscriminate strikes is not what happened to Mr. Karim here. These happened with eerie precision, and that's what's pleaded in our complaint. Now, if there were more facts on the record- Do you dispute that during July and August of 2016, Idlib province and Aleppo were under almost a daily- I'm sorry, Judge Millett, I can't understand what you're saying. Do you dispute that in June, July, and August of 2016, these particular parts of Syria, in particular, Aleppo and Idlib, I think it's a province, were subject to routine and severe bombings? I have no basis to confirm that fact. I do know, of course, as does Mr. Karim, that Syria was at civil war and that strikes were undertaken, including the five on him. All right. Like Judge Henderson, I remember the news, right? Russia had come in at this point, and there were a lot of countries that were doing a lot of bombing, and Aleppo and Idlib province were particularly being torn apart that summer. I think you say one of the bombs happened in the area that had just switched control. They were going back and forth in control. Now, if they're going back and forth in control between government and rebel forces, that means there's a very active war zone. I was surprised that you or your client wouldn't be familiar with that, so I guess you dispute just what the on-the-ground reality in this part of the world was that summer? No, Your Honor. We did not dispute that there were drone strikes undertaken in Syria. I meant drones and bombs. And bombs. It was a civil war zone, indeed. And this particular area was an area of intense fighting. As you said, as you allege, as to one of them, it had just switched from government to rebel or rebel to government control. But I think the thing to remember in this case, Your Honor, as pleaded in the complaint, we set forth facts that show that Mr. Karim was the target of these strikes. That is, they hit his vehicle. You allege he was in the vicinity of the strikes. I believe that we allege they hit his office twice and his vehicles twice. And that belies the notion that the strike was going after some other thing. You know, the fact that these landed on Mr. Karim four times in June and once in August, I mean, it's taken together. This is evidence that suggests that Mr. Karim was the target. Moreover, Mr. Karim was also engaged in activities that would suggest to metadata that he may have been involved in hostile activities. I mean, by metadata, you use that a lot. The metadata that was referenced in the quotation you have was telephone metadata, which is not conversations, but who called who when. That's right, Your Honor. I don't understand what the connection here is. No, Your Honor, the former director of the CIA, General Michael Hayden, says that we kill people based on metadata. And we understand that to mean, based on public documents, that this is signal intelligence. That is, the U.S. uses devices that can track a cell phone's movements. Now, Mr. Karim moves back and forth, interviewing rebels. I don't think tracking a cell phone's movements is metadata. That's just cell tower thinking. I think it depends on what's being used to track the cell phone's movements. I don't understand your connection with the metadata at all, because it was talking about a very different context. I never said we kill U.S. citizens with metadata. That's exactly the point. Your Honor has exactly landed on the point that's of concern here. We're concerned with the erroneous deprivation of Mr. Karim's life on the basis of signal intelligence that may have misinformed the U.S. government about who exactly it had picked up. What do you mean on the basis of signal intelligence? Signal intelligence, that is, if there is intelligence being conducted, which we have pleaded in the complaint that there are programs such as Skynet that are able to latch onto a cell phone and follow someone wherever they go. That's how they determine who's a courier. Had this been used for Mr. Karim, it would see that he had gone to various rebel outposts and interviewed people. Now, to someone who doesn't know that that's a U.S. journalist conducting interviews and then publishing them, that could look very suspicious. It's our contention that he was picked up by the signal intelligence, and it gave intelligence officers or agency heads the wrong impression about who he is. In keeping with the concerns that animated Matthews v. Eldridge and Lockett v. Ohio, where there's a risk of erroneous deprivation of a person's life or liberty interests, those interests must be addressed in a manner which affords that person due process. That's all we're seeking here. The complaint alleges some bombings in June and August or July and August, and then seven months elapsed before the complaint is filed without any allegation of any attempted attacks at all. And we now know that four years have gone by with no attacks. In a complaint for injunctive relief, doesn't the plausibility standard require some showing that there's still a plausible risk of ongoing attacks? Seven months or four years by the time a court, or longer by the time a court would get around to looking at an injunction? If you're pleading for an injunction, you have to say some current risk at the time, and seven months had gone by with nothing happening. Well, Your Honor, we are not privy to how long the government takes to execute someone who is on the kill list. In the case of Mr. Anwar al-Awlaki, for example, we know that his designation was made sometime before 2010 and that he was killed in 2011. You don't know that? I'm sorry. Oh, okay. Go ahead. I'm sorry. Go ahead. Go ahead. I misunderstood you. Yes. So there was at least a year that went by before the government executed him. During the pendency of this litigation, it's true that the government has not undertaken a drone strike on him. I'm talking about the seven months before the complaint was filed. You can't blame that on the pendency of the litigation. Of course, Your Honor. In that case, I would say that based on the example that we're aware of, where the government has targeted a U.S. citizen, seven months appears to be a reasonable and even smaller amount of time than it has taken in the past when undertaking to execute someone on the kill list. Okay. And then my understanding is that Mr. Karim has disappeared, that he was presumed to be taken by a terrorist group in Syria for purposes of a complaint seeking injunctive relief. And if you know otherwise, tell me. Seeking injunctive relief. Do we need to know whether he's in a position to benefit from it? What would you do about the fact that he seems to have been either taken hostage or, you know, I hate to suggest the worst, but one has to think about that. Your Honor, we have no reason to believe that Mr. Karim has been killed. While we do understand that he is in the custody of a rebel group, we don't think that allays any concerns about whether or not he is on the kill list. There's nothing to say that when he is released that the U.S. won't resume its attempt on his life. Moreover, the fact that he is in the same place makes it, you would think, easier to target him for death. But finally, I would say that if the government, if there's a mootness issue, the government can clarify that for us. It has the option to say we don't intend to kill Mr. Karim. And if it does so, this entire case goes away. And its resistance to doing so is what prevents us from abandoning this action. That's a different point than what I was asking. So, I don't, is he in a position where he could participate in a process that he requests this process to clear his name? Is there any way that he could participate in that? Your Honor, if the government were to call him for deposition next week, we would have difficulty accommodating that request. But we don't have any reason to believe that. I'm just, I'm asking a very potential practical question. Could the proceeding that he wants out of this litigation go forward at this time, or do we need to wait? Your Honor, I believe the proceeding can go forward. He has representation. We have authority to proceed on his behalf. And when he is released from custody, if his testimony or something else is needed, he can willingly provide it. Can I ask you a question about the constitutional claims that are raised? So, you have a Fourth Amendment claim in your complaint, as to which the allegation is that there was an unlawful seizure? Yes, Your Honor. Is that right? And is the argument there that there's a seizure by virtue of being allegedly put on the kill list? Yes, Your Honor. And would that mean that you could bring a habeas claim? So, in other words, if you've been seized, and part of where I'm going with this is that there is a line in Reynolds that says, we draw a divide between criminal and civil cases. And one of the issues that's at the core of the viability of the state's secrets privilege, and what its implications are for this case, is that, you know, do we treat this as a typical civil case, or do we treat this as something different from a civil case that's on the order of a criminal case, which is sort of your argument? And I'm just wondering, like in Dover v. Mattis and Hamdi, those were habeas cases. And if you've got a Fourth Amendment seizure argument, could you bring a habeas petition? Your Honor, I don't think that would be the most appropriate claim in this posture, because he's not in the custody of the United States yet. In fact, the U.S. has chosen to bypass prosecution and the normal custodial pretrial detention, and instead move straight to summary execution. So there's a gap between, I mean, if there's a seizure, the seizure's at the hands of the United States. It's not at the hands of somebody else. Right. But there's a gap between an allegation that someone's been seized and the allegation that someone's in custody. I think that's correct, Your Honor. But there's no formal— What if he was under a death sentence but released on his own recognizance? Isn't that effectively what, under your view, is going on here? Correct, Your Honor. But presumably, in the case where there would be a death sentence, he would have enjoyed the due process to which he's entitled. He has not had the benefit of that. No, I'm just for purposes of Chief Judge Rene Voslin's habeas, whether you could bring a habeas action. Because you essentially say, I am under a death sentence. This is your theory, as I understand it. A deeply unconstitutionally imposed death sentence would be your argument, because I've got no judicial process at all. Correct. No charge, even. And the fact that I'm out on my own recognizance, I'm out walking around on my own, doesn't mean I can't still challenge that executive-imposed death sentence. Your Honor, he has challenged the executive-imposed death sentence. In habeas. In habeas. He's seized by the government. And he wants to be seized, and this death sentence follows him wherever he goes, under your theory. And he's constantly subject to it. He couldn't do a habeas action? I suppose it's possible that he could do a habeas action, but that doesn't foreclose the relief that he's seeking here. He's chosen to bring a Fifth Amendment claim as well. And it's on that basis that he is insisting on disclosure of the basis for the designation on the kill list and an opportunity to challenge it. And so in this posture, the relief that he seeks is perfectly available to him. The formalistic docketing distinction between civil and criminal is not dispositive of the relief to which he's entitled. In fact, in U.S. v. Reynolds, the court said that it would be unconscionable to allow someone who faced potential deprivation of liberty not to have the evidence against him. The same concerns, of course, animated Roe v. Roe v. United States, in which the court said that the privilege must give way when the defense requires the evidence. The privilege has also given away classified information. If he brought a civil action and sought damages on the theory that being on the alleged list causes ongoing distress and for which compensation is owed, then would you say that it's a formalistic distinction between civil and criminal? I would say that would be a civil claim in which the case precedent clearly establishes that relief would not be allowed. This is different. He is seeking a Fifth Amendment life and liberty interest here. He's not looking for damages. And, in fact, that's something that I think distinguishes our case from other state secret cases that are civil. In this case, he is seeking to interpose himself into a process that has resulted in his death sentence. It's very clear from case precedent that when these kinds of concerns animate the interest at issue, that due process must be afforded. And that includes cases where national security is involved. In Hamdi v. Runfeld, a plurality, the Supreme Court said it would turn our system of checks and balances on its head if a U.S. citizen who came to a court couldn't avail himself of his due process rights. And that's all we're really seeking here. As you well know, the court reaffirmed that in Doe v. Mattis, a U.S. citizen is entitled to his rights even on a battlefield. And so, in a case where Mr. Karim's life is at stake, those rights are even more acute than they are when a liberty interest is at stake. Let me make sure my colleagues don't have additional questions for you before we hear from the government, and we will give you some rebuttal time. I don't. Okay, thank you. Let's hear from the government now, and we'll give you some rebuttal time, Ms. Plahatsky. Mr. Hanchelwood? Yes, good morning, Your Honors, and may it please the court, Brian Hanchelwood for the government. I'd like to start where the court started, which is withstanding in this case, Mr. Karim has not alleged any facts that would actually link not only the United States to the specific attacks described in the complaint, but much less that Mr. Karim is the actual target of those attacks. And we think that's claimed just from looking at the terms of the complaint itself, which are framed extremely generally with no specific linkage to the United States at all, and really resolved to a claim that anyone who has an electronic device, who's sort of generating signals, and is in the proximity of both explosions and rebels, is therefore plausibly alleging they've been targeted by the United States. So does the allegation of a Hellfire missile bring it closer to the United States? Your Honor, it's certainly true that that's a missile system used by the United States. As you pointed out, it's not at all clear what the basis for that is. In the reply brief at page 10, I point out they say, well, Mr. Karim inferred that on the basis of the strength of the explosion. The specific language is because of its strength and the damage it caused. So, you know, again, even if that allegation is sort of the lone allegation that brings this any closer to the United States, the strength of the inferences that can be drawn from that allegation are not particularly impressive, nor does it exclude the possibility of other actors being the relevant actors in this circumstance, given the context in which all of this is occurring. You're talking about a nation that is wracked by civil war, and as some of the court's questions pointed out earlier, you know, there's, you know, talking about areas sometimes where, you know, control has just changed hands, right, where there are other organizations that, you know, may have an interest in, you know, engaging in strikes in a particular area. So can I ask, is your argument on the fact that we haven't crossed the line from possibility to plausibility, is it based on the notion that yes, there's enough here to say that he was being targeted, but it's not clear by whom? Or is it that there's not enough here to show that he was being targeted because there's just a lot of activity in the area during this time? And so even though you have what the plaintiff alleges is more than a random coincidence because it's five attacks that are on or very close by, that's still not enough because of the degree of bombings that were taking place in the area during this two to three month period. To be clear, we think it's both that he hasn't alleged the United States was involved in these attacks, and that he hasn't alleged enough to show that he was actually the target of these attacks. And even without considering sort of the fact that these are areas of active hostilities, you can just from the allegations and the complaints see, you know, Mr. Cream's not the only individual present for any of these strikes or any of these attacks. Right. So two of them are alleged to have hit a building which contains the on the ground network offices. Apparently, among other things, we're told the OGN office is in the basement and that, you know, there's there's more to the building than just that. In other circumstances, he's, you know, interviewing people. He's sitting in a truck with numerous other near other individuals. You know, he's on a street. He leaves the street. And then when he comes back, there's just been an attack. So, you know, in all of these circumstances, you know, he's not even the only person present, much less. Is there anything to suggest that he's actually the target of any of these specific attacks? And that's, you know, before you even get to the fact that we know that, you know, look, Syria is obviously engaged in an ongoing civil war was in 2016 and continues to be to this day. And that obviously plays a role in the sort of context dependent inquiry that this court has to engage in for assessing the plausibility of allegations in a complaint. And so, given the lack of any factual matter that connects the United States, these attacks or suggests that... Can I back up there? Let's assume it was a Hellfire missile. We'll take that fact or inference in the light most favorable to the plaintiff here. Does that tie it? You've got your other arguments, but I just want to know, does that tie it to the U.S. having done that bombing run? Put aside the target issue. So it wouldn't link the United States to any of the other four, first of all. That's not my question. I understand. So it would work as it would be, it would make it somewhat more likely that the United States was involved in that specific attack. Somewhat more likely, does that mean, how do we know that other people, other, other entities or governments that were engaged in bombing in this area that summer were using Hellfire missiles? There's certainly no allegation the United States is the only entity that uses missiles of that type. So even if, again, crediting the idea that just based off the strength of the explosion, we can conclude that this was a Hellfire missile. Even if you credit that, it doesn't necessarily lead to the conclusion or certainly doesn't compel the conclusion and we don't think plausibly... It compels not to have a test here. I understand. Does it move on this narrow question of whether that one bombing run was conducted by the U.S., does it move that specific factual allegation from possibility to plausibility because it was a Hellfire missile? I don't think it would move it even to plausibility. But that's, of course, your question has assumed that we're setting aside the question of whether in that particular attack, Mr. Kareem was the target, right? So even if you... I'm just, I'm just, I really would like a straight answer on does, on the narrow fact of whether that was a U.S. bombing run, which there are other facts that have to be added in. Let's put those aside. Just on whether that was a bombing run by the U.S., does crediting the allegation that it was a Hellfire missile move that particular factual allegation that was conducted by the U.S., a bombing run conducted by the U.S., from the realm of possibility into plausibility? And if not, why not? I think where there's no allegation and couldn't be, frankly, an allegation that the United States is the exclusive user of this particular type of weapon... Is the exclusive user in that area. Of course, that's what's relevant, is the exclusive user in that area at that time. Right. Well, there's also no allegation to that effect either. You know, if there were an allegation of that type, again, you might be inching closer with each sort of piece of specificity you could provide. I mean, I think they definitely alleged that's their evidence that it was the U.S. that did it, because this is their bomb. Right. Based on the strength of the explosion, he assumes it was a Hellfire missile that was launched from the ground. Right. So, you know, assuming the sort of the full chain of inferences that gets you to that point, then it's certainly more likely at that point that that specific allegation would get you to the claim that the United States engaged in that particular attack. There's no question that makes it more likely. Now, whether or not it makes it plausible, you know, our position would be still no in that circumstance, given the lack of allegations that support anything more here. But of course, you know, your question has assumed and asked me to set aside. Yeah, I'm aware all that other stuff is there. Absolutely. I don't know what to do with the Hellfire allegation. Well, you know, even there, I think the simplest way to deal with it is that if you think that would suffice for plausibility at the pleading stage to show that the United States engaged in that particular strike. And we've discussed, you don't think that's right. But if you think that's true, then he would still have to show, plausibly, that he was the target of that one particular attack. And there's nothing alleged that supports that inference. We know for a fact there are other individuals present. He talks about there's another truck from on the ground network sitting nearby. They're there for, you know, other, yeah, to engage in sort of whatever journalistic activities they were there to engage in. So, you know, there are other individuals in the area. So to suggest that that's plausible an allegation that he's been targeted by that particular attack. There's nothing to support that either. And there's no allegation that this was the only Hellfire missile on that particular day. In other words, it could have been 20 of them dropping. Right. So there's, right. There's no sort of information provided in the complaint about As far as targeting. That's what I'm talking about the targeting. Right. I mean, all we're told in the complaint is just specifically that, you know, he was there. He saw a drone at some time before the explosion. Sometime later, there was an explosion, which he assumes to be from a Hellfire missile because of the strength of that explosion. And that's the sum and substance of the allegation there. We don't have any other additional information on that score. Can I take you to the merits for a second to the state secrets question for a second, unless there's further questions on standing. So on state secrets, it seems to me a lot of the force of the state secrets assertion made by the government here and what effect it has on the case turns on whether we treat this as a civil case or a criminal case or as something that is somewhere in between. But for various considerations, we ought to give it the rubric of one or the other. And what do we do with the situation in which It's not a garden variety civil case because it's not seeking ex post compensation for a civil wrong that was imposed at a prior time. It's also not a garden variety criminal case because the government's not seeking to prosecute somebody But it is a situation in which the allegations are that someone's been placed on a list for targeted killing by the United States. And so that is a context in which there's United States authority being visited on somebody in the nature of A criminal con the consequence of a criminal proceeding. If it were a capital case. And what. So does it seem fair to you then just to treat that as a garden variety civil case, given that this is the context we're talking about I think it makes sense to treat it as a civil case for a couple of reasons. One is that The what this court has recognized and what the Supreme Court has explained in Reynolds is that they're important differences between civil and criminal cases and that the sort of initiating party. In these cases matters in significant ways. And that's not to dispute that you know Mr cream has an important interest in these cases, but as this court has explained in cases like talking to where What we're what the plaintiff is essentially asking the court to do is balance the importance of their own interest against the government's interest in maintaining state secrets. That's not an appropriate inquiry for application of the privilege that inquiry goes to the sort of detail and The care with which the district court is required to scrutinize the government's indication of the privilege because the privilege itself. Is absolute and that's because, as I was referencing moment ago when the government is sued. It doesn't have the same control. Over the case that it does when it brings a criminal prosecution, like the rationale of those cases as Reynolds explains Is it there the government in the criminal cases, the government has the ability to protect information and to make judgments in the course of charging those cases and prosecuting those cases. That it cannot make when it's brought to suit by another by another plaintiff. So, The circumstances what you know when I think Mr creams reply brief is very honest about this. It's simply asking, I want you to balance my interest against the government's interest and create a new rule. That's exactly what this court has said in cases like talking. You don't do that the privilege exists and it applies in these in these circumstances, and that it goes to the way we scrutinize the claims. The claim of privilege and the district court here did that said it was carefully examining the district, the government's declarations to determine whether the occasion for invoking the privilege was appropriate. It correctly made that determination, you know, for all the reasons we've explained and that are apparent. I think both in the public and the classified declarations and in that circumstance, the privilege applies that that's how the privilege operates in these cases. It's a one response to that is that it's it's not the classic situation in which the government's just responding to a lawsuit that's brought against it because the offensive move that the government made is in the allegation that it put Kareem on the list. And then once Kareem and we take that allegation be true for present purposes. Once that has happened, then there's no. It's not as if it's an off. It's a, it's a responsive offensive case to then bring a civil suit. It's just that this is all I have left to do. I got to figure out some way to try to extricate myself from this predicament. I'm in because I think it's just it's just wrongly founded Yeah, I mean, I think the same type of move could be made as to any sort of claim that seeks perspective relief. So if, for example, somebody thought they were a target of surveillance and didn't believe that surveillance was appropriate. You know, in that circumstance, they could come in and say, Well, you know, the government has made the first move it started to surveil me. And in this context, all I can do is bring a civil suit. So, you know, please Let's just say death is different as the Supreme Court has said many times and the government's actually trying out taking the allegations here. As to the government's actually trying to kill him. What's he supposed to do. And let's say the government's made hypothetically, as he says, a serious mistake. What is he supposed to do We are in that circumstance. It's not that the state secrets privilege would no longer apply. Because again, the type of the seriousness of the interest. And again, no one's disputing the seriousness of Mr cream's interest. Is the way it functions under the privilege is to is to calibrate the inquiry. But as this court explained and how can as well when there are, you know, allegations of serious, you know, Issues that can't be addressed as a result of the invocation of state secrets privilege, the correct recourse is to the political branches right is to, you know, ask Congress to engage in some sort of creation of a process, something like that. It's not Sorry, he's supposed to try to get a bill passed. And then the executive branch would say Congress can override the executive branch has judgment about state secrets. That's your position. Exactly the contours of what Congress could or could not do in this area. Come on, come on. That's, that's, so if you're targeting me to kill me without any process. And let's say I've gotten past standing my car keeps blowing. I'm here in the US and my car keeps going up and I keep getting shot at And I say, the only explanation for this is I'm on a kill list by the US government. And let's also assume hypothetically that I actually am on a kill list by the US government and the government's position is Tough luck. You have no rights. You have no capacity to get yourself off that list. I mean, you can write letters to the government. That's it. The government may execute me And there's nothing anyone can I can do to stop it or anyone can do about it. I think it's important to tease apart two different things that I think are in your question. So one is I think part of your question is getting to some of the political question doctrine issues in this case, which I'm just asking, is that your position that there's nothing I can do about it. That's just a bottom line question. An individual, excuse me, an individual in Mr. Kareem's position. My position. I'm on the kill list under this question. Okay, so an individual on the kill list, you know, hypothetical kill list overseeing Under my hypothetical I am actually on the kill list. I don't, I suspect I am and it turns out I am Okay. In that circumstance, whether the government Both for reasons of a court's competence to adjudicate those kinds of questions which gets to the political question issues. And the court's ability to adjudicate claims where the government has properly invoked the state secrets privilege and a court has Properly determined that the government has invoked that privilege. And the answer is there's nothing I can do about it. There's no recourse, you can get There's no difference between my for your political question theory. There's no difference between me and Mr. Kareem If we're talking about, you know, A US citizen who is in Syria. No, no, no, no. I don't, I don't understand why for political question. There's nothing in your briefing that says it turns on his location. So my I'm extending it to someone on US soil. Nothing in your briefing turns on where his location is at all. If that's a factor. Now you can tell us, and I assume it's not for state secrets. Certainly not for state secrets. No. What so you would still argue political question, just as you do here and you would argue state secrets, just as you do here. And if we will for you. That means I'm host Nothing I can do about this death sentence. Certainly, as to the state secrets privilege the what that the invocation of the privilege in this particular case means that the case cannot proceed. Now again, whether that could be No, no. What difference. What differences of me rather than Mr cream and I'm here in the US. I'm sorry, I don't want to suggest that there's Just to speak about how the privilege applies in these cases. If your question is, can a court once the privilege is properly invoked, which is an absolute privilege that the government. Is able to invoke in this litigation. Can a court then proceed to adjudicate the merits, nevertheless, or disregard the government's application of the privilege. Invocation the privilege in that circumstance. The answer is no. Now, as a result, as this court explained in Hopkins, the result may be that meritorious constitutional claims don't get litigated. This is killing us citizen. That's quite a power to say that the executive branch has and it's absolutely unchecked. There's no capacity whatsoever. For judicial review through habeas action or this type of civil action, which is a functional equivalent of a habeas action. There's nothing whatsoever. There's no precedent for that you've got present generally on state secrets. We've got nothing that says executing us citizens. I would my hypothetical is on US soil. This case involves not on US soil. Certainly, there's, there's no specific cases address this specific type of claim. But the point is that the privilege itself. The very premise. Appreciate the how extraordinary that proposition is that the US government can the executive branch can unilaterally decide to kill us citizens and you've given me no basis for distinguishing that even here on us that power existing even here on us soil. Without any process whatsoever. That would make a lot of things a lot easier. Your Honor. I don't mean to suggest that the analysis. If you were adjudicating such a case would be different as to a person on US soil. You know, we obviously have a great question here. My point is simply that That would change based on whether it's US soil. I didn't see anything at all that turned on that. Is it less of a political question if it's on US soil in your You know, whether or not there would be some differences, you know, I simply don't have the, you know, we haven't had to address any of that at this point, but I take your questions to get to A significant concern that obviously that the engaging in a strike of this nature is a serious undertaking. And there's no question that's true. And the government absolutely agrees that in this circumstance, the district court has an important role to play in taking a careful look at the government's assertion of the privilege to ensure that it is appropriate in the circumstances. Can I ask this question. So in Handi If the government, there was no state secrets assertion in Handi, but if the government had asserted the state secrets privilege. Would the result have been that the habeas case goes away and that the detention authority continues to exist. Now, I'm not sure how that how that would have sort of played out in the circumstances because remember It's dependent on the specific facts that are in information that is removed from the case on the basis of the privilege. So here, Mr. Kareem cannot demonstrate even his standing. Without information covered by the privilege or nor for that matter can it can be demonstrated whether or not he has standing at all. So whether or not he's on the was the target of the I'm just hypothesizing situation in which the government would would say that we can't get into Whether we can't get into the bona fides of the determination that Mr. Hamdi is an enemy combatant. Because if we did that, then it would reveal too much and there's military secrets in play and the proceeding just can't go forward in any way that would allow us to shed light on the decision making there. And therefore, it's a military secret under Reynolds and therefore it the proceeding just stops. It's not criminal. It's civil because habeas is an Petition that's filed by the detainee, not an inquiry that's launched by the government and therefore there's nothing further we just continue to detain Again, if it's sort of occasion for invocation of the privilege is appropriate, then, you know, the consequences of flow from that are the consequences of flow from that. But of course, as we know, in the habeas context. The government has, you know, proposed to the district court and then, you know, ultimately has proceeded to litigate under certain protections those habeas petitions, you know, over the last decade. But without ever asserting the state secrets privilege. As far as I know, is that I'm not aware. I could be wrong about that, but It's not a certain the state secrets privilege in that context. Now that all that goes to show is that those cases don't have much to say about what happens when the government does properly invoke the privilege And we know what the answer to that question is because of the Supreme Court's decision and Reynolds and all of this court's cases which have Repeatedly echoed the basic premise that the particular strength of the interest goes to the scope of the inquiry and not to the availability of the privilege in the first instance. Okay, thank you. Let me, let me make sure my colleagues don't have further questions for you, Mr. Hanselwood You think there's any reason since he seems to be in custody of a terrorist organization. Should that affect us going forward with this case, since it's a case just for injunctive relief. Your Honor, I don't know the details of Mr. Kareem's present situation inside the press to Provide any guidance on that, you know, obviously, his counsel would be better positioned to give you whatever his current status is Thank you, Mr. Hanselwood. Miss Plahatsky will give you your two minutes of rebuttal. Thank you, Your Honor. I think the government's argument has just made pretty clear that there are no circumstances under which it would permit a US citizen to challenge his designation on the kill list. In order to have standing the government seems to think that Mr. Kareem needs to provide the make and model of the missiles fired at him. Of course, that's not a reasonable expectation. In the circumstances that he is in, he has provided all the circumstantial evidence that's available to him to make his claim. The case law says that when a plaintiff alleges as Mr. Kareem has done here that discovery will reveal additional evidence and all the other relevant evidence Is in the possession of defendants that he has pleaded facts sufficient to support standing Moreover, the government's argument that this is a political question is deeply disturbing as this court has recognized In al-Shifa and al-Jubeir, the court was asked to review the merits and the wisdom of military judgments. This is an ordinary due process claim and the court has a role to play here as it would in any other due process scenario. It's a purely legal issue and the government has offered no limiting principle as this court has observed On whether and when it can kill US citizens. So whether that's in a parking lot in the United States or abroad in Syria, the government has claimed For the first time ever in this case that has unfettered and unreviewable discretion to kill US citizens at will. If the court adopts the government's argument that would ultimately extinguish the Fifth Amendment due process right that any US citizen has. So we request that this court remand to the district court with instructions to proceed to discovery. Thank you, counsel. Thank you to both councils will take the case under submission.
judges: Srinivasan, Henderson, Millett